[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13179
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cv-00015-MCR-MD

TIMOTHY LOUIS PARKER,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 6, 2014)

Before CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Timothy Parker, a Florida inmate serving a 15-year sentence for aggravated battery on a pregnant person, appeals the denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We granted Parker a certificate of appealability (COA) on a single claim raised in his federal habeas petition, in which he alleged that counsel was ineffective for failing to object to the trial court's jury instruction on aggravated battery or to request a modified instruction that expressly required the State to prove that the victim was pregnant at the time of the offense.

## I.

In April 2003, Parker was charged in Florida state court with aggravated battery on a pregnant person, in violation of Fla. Stat. § 784.045(1)(b). The charging information, largely tracking the statutory language, alleged that on April 7, 2003, Parker committed "a battery upon Barbara Ann Lewis by actually and intentionally touching or striking said person against her will, . . . and at the time of the commission of said battery [Lewis] was pregnant and [Parker] knew or should have known that [she] was pregnant."

At his trial, which began and ended on September 3, 2003, Lewis testified that she and Parker were involved in a short-term relationship and briefly lived together in a motel room. She testified that on April 7, 2003, Parker struck her in the face with his closed fist after she rebuffed his sexual advances, and that only a day before he hit her in the leg with a metal cane. Lewis testified that she was six

2

months' pregnant at the time and, although Parker was not father, he knew of the pregnancy because they had "talked about being together when the baby came." Lewis admitted on cross-examination that she drank alcohol and smoked crack cocaine while she was pregnant, though she denied that Parker had ever asked her to stop using drugs during her pregnancy. Deputy Jeremy Jarman, the officer who responded to the 911 call placed by Lewis, testified that when he arrived at the couples' motel room he noticed that Lewis had "massive swelling on the left side of her face," "a bruise to her right forearm," and "swelling to her right leg." Deputy Jarman offered Lewis medical attention but she declined. Parker did not testify or present any evidence in his defense.

During closing arguments, defense counsel reminded the jury that Lewis had admitted to drinking alcohol and using crack cocaine while pregnant, and suggested that Lewis was retaliating against Parker because he had asked her to stop those activities. Defense counsel also maintained that Lewis' refusal to seek medical treatment following the incident called into question her testimony that Parker had hit her. The State, responding to defense counsel's arguments, asserted that the uncontroverted evidence showed that Lewis was battered by Parker, that she was pregnant at the time, and that Parker was well aware of the pregnancy. In rebuttal, defense counsel did not challenge the State's assertion that Lewis was pregnant at the time, instead arguing that Lewis declined medical treatment

3

because she wasn't "really hurt" and that she had to "accept some responsibility for the situation she found herself in" because "[s]he kept going back" to Parker.

In its instructions, the trial court told the jury that Parker had been accused of battering Lewis while she was pregnant and with knowledge that she was pregnant. The court, without objection from either side, then gave Florida's standard jury instruction on aggravated battery on a pregnant woman, apprising the jurors that the State had to prove "two elements beyond a reasonable doubt" to convict Parker of the charged offense: (1) that the "defendant intentionally touched or struck Ms. Lewis against her will"; and (2) that the "defendant in committing the battery knew or should have known that Ms. Lewis was pregnant." See Fla. Std. Jury Instr. (Crim.) 8.4 (2003). The jury found Parker guilty as charged, and he was sentenced to 15 years imprisonment as a habitual felony offender. Florida's First District Court Appeal summarily affirmed Parker's conviction and sentence on April 21, 2005. See Parker v. State, 900 So. 2d 561 (Fla. 1st DCA 2005).

During the pendency of Parker's direct appeal, but more than a year after his trial, Florida's First District Court of Appeal held that the standard jury instruction on aggravated battery on a pregnant person was flawed because it omitted an essential element of the offense — "that the victim was, in fact, pregnant at the time of the battery." Small v. State, 889 So. 2d 862, 864 (Fla. 1st DCA 2004).

4

The Small court, in response to a properly preserved challenge to the instruction, reasoned that the second element of the standard instruction — that the defendant knew or should have known the victim was pregnant — "appear[ed] to presume that the victim was pregnant" and, as such, the instruction as a whole "had the effect of directing a verdict against [the defendant]" on the essential element that the victim was pregnant. Id. The court concluded that, under the circumstances of that particular case, the erroneous instruction was not harmless because the "alleged victim did not testify," "much of the evidence came in because of exceptions to the hearsay rule," and the defendant requested a proper instruction at trial. Id. at 865. The court further noted that, even if the defendant had not requested a proper instruction at trial, "the failure to give a proper instruction would likely have qualified as fundamental error" exempt from harmless error review "because the omitted element was disputed at trial." Id. The court of appeals urged the Florida Supreme Court to modify the standard jury instruction on aggravated battery on a pregnant person, id., which the state's highest court eventually did in July 2007, see In re Standard Jury Instructions in Criminal Cases, 962 So. 2d 310, 313 (Fla. 2007).

On July 13, 2005, Parker filed a state post-conviction motion under Florida Rule of Criminal Procedure 3.850, contending, in relevant part, that trial counsel was constitutionally ineffective in failing to object to the standard jury instruction

on the ground that it did not explicitly require the State to prove that the victim was pregnant at the time of the battery, and in failing to request a modified instruction that included this requirement.  The state trial court rejected the foundation of Parker's ineffective assistance claim, finding that it was "conclusively refuted by the record" because "the Court properly instructed the jury regarding the elements of the offense charged in this case."  On February 23, 2006, Florida's First District Court of Appeal summarily affirmed the denial of Parker's ineffective assistance claim without further discussion.  See Parker v. State, 922 So. 2d 336, 337 (Fla. 1st DCA 2006).  It did so despite its earlier decision in Small and without even mentioning that decision.

After filing additional state post-conviction motions, which were dismissed as successive and untimely, Parker filed his federal habeas petition in January 2010, reiterating his claim of ineffective assistance of counsel.  He asserted that counsel should have known that the jury instruction did not fully track the language of Fla. Stat. § 784.045(1)(b), and while he acknowledged that Lewis' unrebutted trial testimony indicated that she was pregnant at the time of the battery, he asserted that she "was not in fact pregnant" and that the State had failed to present any medical evidence to corroborate her testimony.

The district court denied the § 2254 petition, finding that trial counsel was not ineffective for failing to request a different jury instruction because, at the time

of Parker's trial, no state court had held that the standard jury instruction on aggravated battery was deficient.  The court emphasized that an attorney cannot be deemed ineffective for failing to anticipate a later change in the law, which occurred when the First District Court of Appeal issued its decision in Small more than a year after the trial of this case.

## II.

In accordance with our COA, Parker broadly contends that his trial attorney rendered ineffective assistance of counsel in failing to object to the standard jury instruction on aggravated battery or to request a modified instruction that explicitly required the State to prove that the victim was pregnant at the time of the offense. However, he devotes the bulk of his counseled brief to arguing that the trial court's jury instruction, by omitting an essential element of the offense, violated his due process right to a fair trial.  That due process claim is not properly before us because it was not raised in Parker's § 2254 petition and is outside the scope of the COA.  See Murray v. United States, 145 F.3d 1249, 1251 (11th Cir. 1998) (holding that appellate review in a habeas case "is limited to the issues specified in the COA").  Although the due process claim that Parker attempts to pursue on appeal is factually related to the ineffective assistance claim encompassed by the COA, the two claims are legally and analytically distinct.  See Bailey v. Nagle, 172 F.3d

7

1299, 1304 n.8 (11th Cir. 1999) ("An ineffective-assistance claim is analytically distinct from the substantive claim underlying it.").

As to the ineffective assistance of counsel claim properly before us in this appeal, we review de novo the district court's rejection of that claim. See McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). To prevail on an ineffective assistance claim, a petitioner must demonstrate both deficient performance and prejudice — that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068 (1984). There is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," id. at 689, 104 S.Ct. at 2065, and a petitioner seeking to overcome that presumption must establish "that no competent counsel would have taken the action that his counsel did take," Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Where a petitioner challenges his conviction based on the alleged errors of counsel, the prejudice inquiry asks "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695, 104 S.Ct. at 2068–69. In making this determination,

we "must consider the totality of the evidence before the judge or jury."  Id. at 695, 104 S.Ct. at 2069.

Federal habeas review of claims adjudicated on the merits in state court, however, is generally circumscribed by two principles of deference, one dealing with questions of federal law and the other with questions of state law.  First, the Antiterrorism and Effective Death Penalty Act (AEDPA) precludes the grant of federal habeas relief on a claim adjudicated on the merits in state court unless the state court's decision involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Second, because state courts are the ultimate expositors of state law, federal habeas courts are bound by state-court determinations on state-law questions.  See Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886 (1975) ("This Court . . . repeatedly has held that state courts are the ultimate expositors of state law, and that we are bound by their constructions except in extreme circumstances . . . .") (citation omitted); Cargill v. Turpin, 120 F.3d 1366, 1381 (11th Cir. 1997) ("We are not at liberty to challenge [a] state court determination of state law.").

9

Both of these principles are implicated in this case.  The state trial court, in a decision summarily affirmed by Florida's First District Court of Appeal, rejected the state-law underpinnings of Parker's ineffective assistance claim by finding that the jury was, as a matter of state law, properly instructed on the elements of aggravated battery on a pregnant person.  Ordinarily, we would be bound by the states courts' determination that the challenged jury instruction was proper, which, in turn, would fatally undermine Parker's contention that his trial attorney was ineffective for failing to object to that instruction.  But the deference generally owed to state-court determinations on state-law questions is complicated in this case by the fact that, less than two years earlier, Florida's First District Court of Appeal — the same appellate court that summarily affirmed the denial of Parker's ineffective assistance claim — held that the same standard instruction that was given at Parker's trial was defective.

Although these seemingly contradictory state-law rulings raise an interesting theoretical question, we need not resolve it.  Nor do we need to decide how to apply AEDPA deference when a state court's decision on a question of federal law hinges upon a disputed interpretation of state law.  The reason we need not decide these issues is because, even if we were to assume that the challenged jury instruction was improper as a matter of state law, Parker would still not be entitled to federal habeas relief under de novo review.  See Berghuis v. Thompkins, 560

10

U.S. 370, 390, 130 S.Ct. 2250, 2265 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies . . . ."). Parker would not be entitled to such relief for two independent reasons.

First, as the district court properly concluded, Parker has not shown that his trial counsel rendered deficient performance in failing to object to the jury instruction on aggravated battery, which was drawn almost verbatim from the then-existing standard instruction that had been approved by the Florida Supreme Court. At the time of his trial in September 2003, no Florida court had held that the standard jury instruction was flawed. The Smalls decision was not issued until November 30, 2004, more than a full year after Parker's trial. It is well settled in this circuit that an attorney cannot be deemed ineffective for failing to anticipate a later change in the law. See Black v. United States, 373 F.3d 1140, 1144, 1146 (11th Cir. 2004) (holding that counsel does not render deficient performance in "failing to predict what was not yet a certain holding" and where, at the relevant time, "the legal principle at issue [was] unsettled"); United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (noting that "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," and that precedent applies even when the "issue was, in hindsight, a sure fire winner"); Jackson v. Herring, 42 F.3d

11

1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by Strickland, an attorney need not anticipate changes in the law."); Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (quotation marks and brackets omitted).

We recognize that the Florida Supreme Court has long adhered to the view that standard jury instructions are not necessarily correct and that its approval of those instructions does not foreclose parties from requesting alternative instructions or contesting the correctness of the approved instructions. See Standard Jury Instructions in Criminal Cases, 723 So. 2d 123, 123 (Fla. 1998). Nevertheless, we cannot conclude that no reasonable trial attorney would have failed to object to the standard jury instruction that had yet to be questioned, much less disparaged, by any state appellate court, particularly given that the undisputed evidence presented at Parker's trial showed that the victim was pregnant at the time of the offense. Parker has therefore failed to show that trial counsel's performance was constitutionally deficient.

Second, Parker has also failed to demonstrate that he was prejudiced by counsel's allegedly deficient performance. Lewis' testimony that she was six months' pregnant at the time of the offense was not contradicted by any other

12

evidence introduced at trial.  In light of that uncontradicted testimony, there is no reasonable probability that the jury would have acquitted Parker of the charged offense had the trial court specifically instructed it that the State had to prove the victim's pregnancy beyond a reasonable doubt.  Throughout his federal habeas proceedings, Parker has espoused the view that Lewis' testimony, though unrebutted, was insufficient to support his conviction because the State did not offer any conclusive medical evidence to corroborate her claimed pregnancy.  That is wrong.  Lewis' testimony, if believed by the jury, was alone sufficient to establish beyond a reasonable doubt that she was pregnant at the time of the battery.  See, e.g., Craig v. Singletary, 127 F.3d 1030, 1044 (11th Cir. 1997) (explaining that even "the uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt").  The jury was entitled to credit her testimony.  See United States v. Prince, 883 F.2d 953, 959 n.3 (11th Cir. 1989) ("Weighing the credibility of witnesses . . . is within the province of the jury, and the jury is free to believe or disbelieve any part or all of the testimony of a witness.").

Because Parker cannot prevail on his ineffective assistance of counsel claim on de novo review, we affirm the district court's denial of his § 2254 habeas petition.

**AFFIRMED.**

13